J-A01034-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THURMOND ALLEN | : | |
| | : | |
| Appellant | : | No. 2144 EDA 2019 |

Appeal from the Judgment of Sentence Entered May 29, 2019
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0004768-2017

BEFORE: LAZARUS, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.: **FILED MAY 17, 2023**

Thurmond Allen ("Thurmond") appeals from the judgment of sentence, entered in the Court of Common Pleas of Delaware County, following his conviction of persons not to possess a firearm.[1, 2] Upon review, we affirm.

On January 23, 2017, at approximately 11:30 a.m., Police Officer Jonathan Jagondinski executed a search warrant at an apartment building located at 313 Creek Drive, Apartment 319, in Delaware County. The search warrant sought, *inter alia*, narcotics, drug paraphernalia, and firearms. Police recovered a sawed-off shotgun, a bullet, a black ski mask, two swords, a taser,

---

[1] Thurmond purports to appeal from the order denying his post-sentence motion. However, "[i]n a criminal action, [an] appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions." ***Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2011) (en banc) (citation omitted). Instantly, Thurmond's judgment of sentence was entered on May 29, 2019; we have corrected the caption accordingly.

[2] 18 Pa.C.S.A. § 6105.

a PA license plate, a marijuana grinder, a glass bong, a burnt marijuana roach, and various pieces of mail addressed to both Thurmond and his girlfriend, Sabrina Allen (Sabrina).[3]  **See** Trial Court Opinion, 10/24/19, at 2.  The sawed-off shotgun and ski mask were located in a duffle bag in the living room of the apartment.  Thurmond was arrested and charged with persons not to possess a firearm, prohibited offensive weapon, possession of a controlled substance, possession of drug paraphernalia, and three counts of conspiracy.

On September 18, 2018, Thurmond filed an omnibus pretrial motion seeking suppression of the evidence recovered at Apartment 319.  The trial court entered an order granting Thurmond's motion to suppress.  The Commonwealth appealed to this Court, and we reversed the trial court's order and remanded the matter for further proceedings.  **See Allen**, **supra**.

---

[3] The search warrant arose from an incident that occurred on January 22, 2017, at approximately 9:43 p.m. in the parking lot of the apartment building. Police had responded to reports of a gun fight and, upon arrival, spoke with Anthony Allen (Anthony) and Sabrina, who informed police that Sabrina had gotten into a fight with her boyfriend, Thurmond.  Sabrina called Anthony, her son, who confronted Thurmond, and a fight ensued.

Ultimately, Police searched Anthony's vehicle and recovered a substantial amount of marijuana, which resulted in Anthony's arrest.  **See Commonwealth v. Allen**, 203 A.3d 299 (Pa. Super. 2018) (Table).  Police did not recover a firearm in the vehicle.  **See id.**  Police then proceeded to Apartment 319 to speak with Thurmond about the alleged use of a firearm. Thurmond was present at the apartment, and he refused to consent to a search of his apartment, but his neighbor, Cynthia Neenan, who had reported the gun fight, told police that she had overheard someone involved say they had a gun.  As a result, Police sought the instant search warrant.

Upon remand, on April 23, 2019, Thurmond proceeded to a jury trial. During trial, the Commonwealth withdrew the charges of prohibited offensive weapon, possession of a controlled substance, and all three conspiracy counts. At trial, the parties entered a stipulation that Thurmond was a person prohibited by law from possessing, using, or controlling a firearm. Ultimately, the jury convicted Thurmond of persons not to possess a firearm, but acquitted him of possession of drug paraphernalia. The trial court deferred sentencing and ordered the preparation of pre-sentence investigation report. On May 29, 2019, the trial court sentenced Thurmond to a period of 42 to 84 months in prison.

Thurmond filed a timely post-sentence motion challenging the sufficiency of the evidence and the verdict as against the weight of the evidence. On June 25, 2019, the trial court denied Thurmond's post-sentence motion. Thurmond filed a timely notice of appeal, and both Thurmond and the trial court have complied with Pa.R.A.P. 1925.[4]

_____

[4] We note that despite Thurmond's timely appeal, several additional matters have delayed our disposition in this case. Subsequent to the filing of his timely appeal, Thurmond requested to proceed *pro se* and this Court remanded for a *Grazier* hearing. *See Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998). On remand, Thurmond indicated that he wished to proceed *pro se*, and the trial court appointed the Delaware County Public Defender's Office as standby counsel.

During his time as a *pro se* appellant, Thurmond filed in excess of 10 applications for relief. Of particular relevance, on October 20, 2020, the trial court issued an order directing Thurmond to forfeit the firearm in question. Thurmond filed a *pro se* application for relief requesting that we reverse the
*(Footnote Continued Next Page)*

Thurmond now raises the following claims for our review:

1. Whether the evidence was insufficient as a matter of law to establish possession of a firearm, an element of 18 Pa.C.S.[A.] § 6105, beyond a reasonable doubt where the evidence did not demonstrate [Thurmond]'s conscious dominion over the recovered firearm, in violation of appellant's federal and state constitutional rights?

2. Whether the trial court erred in denying [Thurmond]'s motion for a new trial, as the verdict was against the weight of the

_____

trial court's order. This Court directed the Prothonotary to docket the application for relief as a separate notice of appeal. *See* Order, 12/2/20, at 1. That appeal was docketed at 2159 EDA 2020.

Simultaneously, Thurmond filed a *pro se* motion to stay the forfeiture order in the trial court, which the trial court granted pending the outcome of the instant appeal. *See* Order, 4/8/21, at 1. It appears that additional confusion arose, and Thurmond filed a timely *pro se* notice of appeal from the trial court's forfeiture order, which this Court docketed as 2363 EDA 2020. Ultimately, this Court quashed 2363 EDA 2020 as duplicative of the appeal at 2159 EDA 2020.

After this stint as a *pro se* appellant, Thurmond requested appointment of counsel, which this Court granted and appointed the Delaware County Public Defender's Office to represent Thurmond for the remainder of this appeal. *See* Order, 6/16/21. In response, the trial court permitted appellate counsel to file an amended Rule 1925(b) concise statement; however, the trial court issued its Rule 1925(b) order at 2159 EDA 2020, and not at the instant appeal. Appellate counsel complied and, upon realizing that the amended Rule 1925(b) statement was filed at the wrong appellate docket, filed an application to withdraw the briefing schedule at 2159 EDA 2020 and transfer the record to 2144 EDA 2019, which this Court granted. Therefore, our Court functionally stayed the 2159 EDA 2020 appeal. Appellate counsel has since filed an appellate brief at the instant appeal, and we proceed to address the claims raised therein.

We note that the appeal at 2159 EDA 2020 has a pending Rule to Show Cause as to whether or not that appeal should be transferred to the Commonwealth Court as appeals from forfeiture orders fall within the Commonwealth Court's jurisdiction. We make no ruling on that Rule, as that appeal is not before this panel, and, thus, the appeal at 2159 EDA 2020 remains pending.

evidence where the determination of [Thurmond]'s guilt was based purely on speculation and conjecture, in violation of [Thurmond]'s constitutional rights under the state and federal constitutions?

3. Whether the trial court erred and abused its discretion in sustaining the Commonwealth's objection to admission of testimony regarding evidence of third-party guilt?

Brief for Appellant, at 4 (reordered).

In his first claim, Thurmond argues that the Commonwealth presented insufficient evidence that Thurmond constructively possessed the sawed-off shotgun. *Id.* at 13-27. Thurmond concedes that he is a person not to possess a firearm and, consequently, focuses his entire argument on constructive possession. *Id.* at 15-16. Thurmond contends that he was not in the apartment at the time the search warrant was executed, but asserts that Anthony was there mere hours before the execution of the search warrant. *Id.* at 22-26. Thurmond further argues that the Commonwealth failed to present any evidence "of his presence in or near the apartment close in time to the search warrant." *Id.* at 22-23. We disagree.

When examining a challenge to the sufficiency of the evidence, we adhere to the following standard of review:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not [re-]weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak

and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Smith*, 97 A.3d 782, 790 (Pa. Super. 2014) (citation omitted).

Section 6105 of the Pennsylvania Uniform Firearms Act provides, in relevant part, as follows:

**§ 6105. Persons not to possess, use manufacture, control, sell or transfer firearms**

**(a) Offense defined.--**

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer[,] or manufacture or obtain a license to possess, use, control, sell, transfer[,] or manufacture a firearm in this Commonwealth.

18 Pa.C.S.A. § 6105(a)(1).

An individual can possess a firearm either physically or constructively. Regarding constructive possession, we are guided by the following:

Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference[,] arising from a set of facts[,] that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control

- 6 -

the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa. Super. 2012).

"To find constructive possession, the power and intent to control the contraband does not need to be exclusive to the appellant." *Commonwealth v. Rojas-Rolon*, 256 A.3d 432, 438 (Pa. Super. 2021). "[C]onstructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." *Commonwealth v. Johnson*, 26 A.3d 1078, 1094 (Pa. 2011) (citation omitted).

Instantly, our review of the record reveals that the Commonwealth presented sufficient evidence to sustain Thurmond's conviction of persons not to possess. At trial, Officer Jagodinski testified for the Commonwealth that police recovered court mail addressed to Thurmond,[5] as well as male and female clothing throughout the apartment. *See* N.T. Jury Trial, 4/23/19, at 200-01, 208-10. Officer Jagodinski also testified that Thurmond's name was on the apartment lease. *See id.* at 190, 259-60. Thus, it is clear Thurmond lived in this apartment, and it is of no moment that Thurmond was not present at the time the search warrant was executed. *See Commonwealth v, Macolino*, 469 A.2d 132 (Pa. 1983) (where contraband was recovered via

---

[5] The letter was from District Court 38-1-16, and addressed to Thurmond Allen at 313 Creek Drive, Apartment 319, Wayne Pennsylvania, 19087. N.T. Jury Trial, 4/23/19, at 201, 08. The Commonwealth noted, at trial, that St. Davids, Radnor, and Wayne all share the 19087 zip code. *Id.* On cross-examination, Officer Jagodinski testified that this letter involved payment of a traffic ticket. *Id.* at 208-09.

search warrant in husband and wife's shared bedroom, Commonwealth presented sufficient evidence of constructive possession). Accordingly, we conclude that the Commonwealth presented sufficient evidence to sustain Thurmond's conviction. *See Johnson*, *supra*; *Smith, supra*.

In his second claim, Thurmond argues that the verdict was against the weight of the evidence. Brief for Appellant, at 29-32. Similar to his sufficiency claim, Thurmond contends that he was not in the apartment at the time the search warrant was executed, and that the only evidence linking him to the apartment is a single piece of mail. *Id.* at 31-32. Thurmond asserts that Anthony had a stronger connection to the apartment and, therefore, the sawed-off shotgun. *Id.* Thurmond posits that due to Anthony's connection to the apartment, the verdict was against the weight of the evidence. *Id.*

Our standard of review related to a challenge to the verdict as against the weight of the evidence is well settled.

> The weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, part, or none of the evidence and to determine the credibility of witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the . . . verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Small*, 741 A.2d 666, 672-73 (Pa. 1999). Additionally, where the trial court has ruled on the weight claim, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence; rather, our appellate review is limited to whether the

trial court abused its discretion in ruling on the weight claim. ***Commonwealth v. Champney***, 832 A.2d 403, 408 (Pa. 2003).

Instantly, Thurmond's connection to the apartment was not based solely on a single piece of court mail. Rather, the Commonwealth presented evidence, through Officer Jagodinski's testimony, that Thurmond's name appeared on the apartment lease and the firearm was found in a shared common space of the apartment. ***See*** N.T. Jury Trial, 4/23/19, at 190, 200-01, 208-10, 259-60. By contrast, Anthony's name was not on the apartment lease, and police did not recover any mail addressed to Anthony. In light of these facts, the trial court concluded that the jury's verdict did not shock the conscience. ***See*** Trial Court Opinion, 3/25/22, at 4-5. Upon review, we discern no abuse of discretion on behalf of the trial court, and we conclude that this claim lacks merit. ***See Champney***, ***supra***.

In his third claim, Thurmond argues that the trial court erred by sustaining the Commonwealth's objection to cross-examination questions regarding Anthony. Brief for Appellant, at 27-29. Thurmond contends that Officer Jagodinski would have testified to "physical characteristics of Anthony [] to demonstrate that the ski mask in the suitcase with the firearm could not have fit [Thurmond.]" ***Id.*** at 28. Thurmond asserts that this testimony was relevant and admissible as evidence of third-party guilt because it would "support an inference that [Thurmond] did not commit the crime[.]" ***Id.*** (citation omitted). We disagree.

Preliminarily, as noted by the trial court in its opinion, this claim is waived. Thurmond's third-party guilt challenge was made for the first time in his amended Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b) Statement, 7/12/21, at 1-2. Additionally, Thurmond has failed to specify where in the record he preserved this challenge, and we have found none. It appears that Thurmond is referencing an exchange[6] between respective counsels and the court, but there is no reference to third-party guilt or any basis for which this evidence may have been admissible. *See* Trial Court Opinion, 3/25/22, at 8-9; N.T. Jury Trial, 4/23/19, at 214-15. Accordingly, we conclude that this claim has not been properly preserved for our review. *See* Pa.R.A.P. 302(a) ("[I]ssues not raised in the [trial] court are waived and cannot be raised for the first time on appeal."); *see also* Pa.R.A.P. 2117(c) (requiring appellate brief state where issues are preserved); Pa.R.A.P. 2119(e) (requiring argument section state where issues are preserved).

_____

[6] Prior to this exchange, Thurmond's counsel was attempting to elicit testimony that the ski mask, found in the duffel bag with the sawed-off shotgun, did not fit Thurmond, but rather fit Anthony. *See* N.T. Jury Trial, 4/23/19, at 211-15. Thurmond's counsel sought to demonstrate this by having Thurmond wear the ski-mask before the jury, and attempted to elicit testimony from Officer Jagodinski that the mask did not fit Thurmond "well." *Id.* at 211-13. Counsel then asked Officer Jagodinski "[Anthony] would probably fit in that mask a little better, right?" *Id.* at 214.

The Commonwealth objected to that line of questioning, and the trial court sustained it as misleading and confusing to the jury, because Anthony was not present in the courtroom, and the questions called for speculation regarding the size of Anthony's head and whether a mask fit a person that Officer Jagodinski could not see. *Id.* at 214-15; Trial Court Opinion, 3/25/22, at 8-9.

- 10 -

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/17/2023</u>